**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| Jessica Irving<br>8339 Davington Drive<br>Dublin, Ohio 43017, | : | |
| Plaintiff | : | |
| -vs- | : | |
| | : | |
| Steve Carr<br>c/o Board of Education<br>Southwestern City School District<br>3805 Marlane Drive<br>Grove City, Ohio 43123 | :<br><br>:<br><br>: | Civil Action No. _____ |
| and | : | |
| Nicole Tyo<br>Director, Special Education<br>c/o Board of Education<br>Southwestern City School District<br>3805 Marlane Drive<br>Grove City, Ohio 43123 | :<br><br>:<br><br>: | |
| and | : | |
| Jennifer Bogenrife<br>Coordinator, Special Education<br>c/o Board of Education<br>Southwestern City School District<br>3805 Marlane Drive<br>Grove City, Ohio 43123, | :<br><br>:<br><br>: | |
| and | : | |
| Deborah Carpenter<br>Coordinator, Special Education<br>c/o Board of Education | :<br><br>: | |

Southwestern City School District : 
3805 Marlane Drive 
Grove City, Ohio 43123, :

    and : 

Carl R. Metzger : 
Assistant Superintendent, Personnel 
c/o Board of Education : 
Southwestern City School District 
3805 Marlane Drive : 
Grove City, Ohio 43123, 
                                                : 

    and 
                                                : 

Amber Hufford 
Coordinator, Student Services : 
c/o Board of Education 
Southwestern City School District 
3805 Marlane Drive : 
Grove City, Ohio 43123, :

    and : 

William Wise : 
Superintendent of Schools 
c/o Board of Education : 
Southwestern City School District 
3805 Marlane Drive : 
Grove City, Ohio 43123, 
                                                : 

    and 

Board of Education : 
Southwestern City School District 
3805 Marlane Drive : 
Grove City, Ohio 43213 
                                                : 

    Defendants

# COMPLAINT

## I. INTRODUCTION, PARTIES, JURISDICTION

1. At all times pertinent hereto, Plaintiff Jessica Irving, an African-American, was employed by Board of Education, Southwestern City School District [hereafter, "the Board"] in the capacity of Speech-Language Therapist [hereafter, "SLP"];

2. Plaintiff's position came under the supervision of the position of Director, Special Education, and Coordinator, Special Education. Defendants Carr and, subsequently, Tyo, occupied the former position. Defendants Bogenrife and Carpenter occupied Coordinator positions. Defendant Metzger held the position of Assistant Superintendent, Personnel, reporting directly to Superintendent Wise. Defendant Hufford occupied the position of Coordinator reporting to Metzger. Defendant Wise ultimately had supervisory authority over Plaintiff and all individual Defendants. The Defendants' unlawful acts, as set forth below, were undertaken in their capacities as agents of the Board, constituting state action. All had the authority to affect, and did adversely affect, the terms and conditions of Plaintiff's employment. They are sued in their individual capacities;

3. This action asserts federal claims under 42 U.S.C. §1981 and 42 U.S.C. §1983;

4. This Court has jurisdiction of the federal claims pursuant to 28 U.S.C. §1331;

5. Venue is proper in this Court under 28 U.S.C. §1391;

## II. FACTS

6. Plaintiff realleges Paragraphs 1 through 5 as if fully set forth herein;

7. Plaintiff's employment with the Board commenced in November, 2009;

8. In order to fulfill the role of a Speech-Language Therapist in a public school system such as the Southwestern City School District, Plaintiff was required to be licensed by the Ohio Board of Speech-Language Pathology and Audiology [OBSLPA]. Plaintiff first received her license in May, 2007, License No. 9222 and has been continuously licensed since that date. In addition to this license, an SLP must receive from the Ohio Department of Education [hereafter "ODE"] a "Pupil Service License" in order to qualify to deliver services in public schools. Plaintiff was issued this license in May, 2007, No. OH03041750 and held that continuously throughout her tenure with the Board;

9. Plaintiff, in the year 2009 and after, had a number of assignments and always received high marks for performance;

10. For the 2013-2014 school year, Plaintiff sought, and received, assignment to Darby Woods Elementary School. This school was the most convenient to her home;

11. Plaintiff, as with all SLP's, worked in conjunction with other Special Education staff, as a member of the school's Special Education team;

12. As part of the team, Plaintiff was called upon to evaluate students to determine if they qualified for special education benefits;

13. In determining that a student qualifies for speech and language therapy, the SLP is affirming that the Board is entitled to payment from Medicare for the therapies delivered;

14. The SLP is responsible for keeping records of delivery of services, and sending this data to an independent party [Hpcohio] which verifies and bills for those students who are Medicare-eligible, from which payments are made to the Board;

15. In the year 2013-2014, Plaintiff began to feel concern that the administration at Darby Woods was "overqualifying" students for delivery of special education services, including speech therapies. Overqualifying students for speech and language therapy would result in unjustified invoicing of Medicaid for reimbursement of such services. Plaintiff communicated concerns to Kristen Millet, who oversaw Special Education Staff Development, K-6. Millet did not respond;

16. Late in that year, she communicated with Gwen Spencer, then-Director, Special Education, about her concerns;

17. From the beginning of the 2014-15 school year, the administration at Darby Woods, and the other members of the team, continued to pressure Plaintiff to qualify students for speech and language therapies, which Plaintiff, after testing the students, resisted. Her reluctance was based, in part, on her perception that the unnecessary qualification of students for special education was motivated by the desire to increase the amount of Medicare payments to the Board thus, essentially, defrauding the government;

18. Plaintiff continued to bring her concerns to the attention of Spencer, without any action being taken;

19. As the year progressed, the Darby Woods administration and team increasingly isolated Plaintiff from routine activities and limited communication with her. Plaintiff's work environment became increasingly hostile. She was described by IEP members as an "uppity nigger" not qualified to hold the SLP position. This impaired her ability to carry out her tasks and caused her great emotional distress;

20. In January, 2015, Defendant Carr was reinstated to replace Spencer as Director, Special Education;

21. Plaintiff brought her concerns about the practices at Darby Woods to Carr's attention, including her concerns about her race as a motivating factor in her treatment. He did not act;

22. As the school year wound down, Plaintiff sought a meeting with Carr and eventually met with him on or about April 8, 2015. Plaintiff again reported her ongoing concerns about the pressure to overqualify students for special education services, and addressed the treatment she was receiving from the administration and team in response. Plaintiff told Carr that it was her desire to stay at Darby Woods, but asked him to intervene to make her work environment professional and collegial;

23. Plaintiff again met with Carr on or about May 18, 2015, and again expressed concerns, including the concern that the work environment she was experiencing was at least in part due to her race. She again expressed the desire to remain at DarbyWoods with a changed work environment;

24. On or about May 29, 2015, Plaintiff received notice that Carr had removed her from Darby Woods, and that she was being assigned for the upcoming year to Park

Street Elementary School. Plaintiff, pursuant to 42 U.S.C. §2000e-5(e) on the same date filed a Charge of Discrimination with the Ohio Civil Rights Commission and the Equal Employment Opportunity Commission, bearing the Charge No. 22A-2015-02088C. This charge was communicated to Defendants shortly thereafter;

25. Carr resigned that summer and Defendant Tyo took his place. Defendant Bogenrife was assigned as Plaintiff's Coordinator shortly before the commencement of classes;

26. Classes commenced August 27, 2015. Although Plaintiff had received notice of assignment to three schools earlier in the summer, it was not until this date that she learned the assigned student caseload;

27. Upon receiving notice of the number of students she was required to serve, Plaintiff learned that her workload assignment was much greater than that of the other SLP's, all of whom were Caucasian. She confirmed that the assignment, in fact, exceeded the maximum number allowed under the regulations issued by the ODE, found in O.A.C. §3301-51-09. She immediately began communicating her concerns to Tyo and Bogenrife;

28. Because of confusion in the department, inadequate procedures, and overwhelming responsibilities imposed by Defendants, Plaintiff's work immediately suffered;

29. On September 15, 2015, Plaintiff filed a charge of discrimination with the Ohio Civil Rights Commission, asserting that her assignment was in retaliation for engaging in protected expression, Charge No. COL 71 (41996) 09162015. This charge was communicated to Defendants shortly thereafter;

30. The assignment made by Carr, and subsequent actions by Metzger, Tyo, Bogenrife and Carpenter were done with the intent to drive Plaintiff out of the District. Defendant Wise was aware of the actions, and explicitly or implicitly approved them. The acts included, but were not limited to:

    a. Intentionally creating an intolerable work environment;

    b. Refusing to apply the ODE Special Education Operating Standards, O.A.C. §3301-51-09(I)(1) for SLP workload determinations, which would have confirmed Plaintiff's assignments violated Ohio law;

    c. Issuing a retaliatory "letter of direction";

    d. Co-opting administrators and Special Education intervention specialists at Plaintiff's schools to monitor her activities and report any alleged failure of her delivery of services;

    e. Fabricating allegations against Plaintiff with the intent of papering her file so as to justify further disciplinary action and termination;

31. In September, 2015, Plaintiff contacted Gregg Thornton, Executive Director of the Ohio Board of Speech-Language Pathology and Audiology [hereafter "OBSLPA"] with concerns that the District was violating maximum limits on student assignments to SLP's;

32. On September 23, 2015, Plaintiff communicated to Defendants that she was in contact with OBSLPA concerning the violation of the ODE regulations;

33. The next day, Bogenrife, Tyo and Kevin Laffin [who reported to Metzger] with the knowledge and approval of the other Defendants, prepared and served on Plaintiff a "Letter of Direction;"

34. Defendants continued to communicate with administrators, teachers and IEP intervention specialists in the three schools to which Plaintiff was assigned, directing that those individuals surreptitiously monitor Plaintiff's delivery of services and report back to Defendants any alleged infractions;

35. Defendants continued to collect and/or fabricate allegations against Plaintiff through October 14, 2015;

36. On or about October 14, 2015, Plaintiff was called into a meeting attended by Bogenrife, Metzger and Laffin. Plaintiff was told that the meeting was intended to determine if she had met the obligations imposed by the "Letter of Direction". Metzger did verbalize and sign off that she had satisfied those obligations. However, Bogenrife then brought up numerous vague accusations of performance issues, unaccompanied by any specifics that would have allowed Plaintiff to respond;

37. Following this confrontational meeting, Defendants continue to question Plaintiff an make demands that she attempted to fulfill, but made no meaningful changes in the student caseload which was oppressive;

38. As a result of the intolerable working environment intentionally put upon Plaintiff by these Defendants, Plaintiff's health suffered greatly and on or about October 30, 2015, her health care provider ordered her to remove herself from the environment. Plaintiff then went on medical leave;

39. When Defendants received notice that Plaintiff was certified by her health care provider as requiring leave, they instructed Defendant Hufford to investigate Plaintiff with the intent to find some infractions by her that could be used against her;

40. Hufford undertook this investigation, with the cooperation of Tyo, Bogenrife and Carpenter. Shortly after Plaintiff went on leave, Hufford contacted Plaintiff and requested that Plaintiff produce for her records of Plaintiff's activities in the period from the start of classes until Plaintiff's departure. When Plaintiff asked why Hufford needed the documents, Hufford lied, and concealed from her that Hufford was engaged in an investigation of Plaintiff's activities not only in the current year, but in past years;

41. Without a credible explanation from Hufford of the reason she wanted Plaintiff's records, Plaintiff did not respond;

42. Plaintiff was constructively discharged by the Board because of the discriminatory and retaliatory actions taken against her;

43. Following Plaintiff's separation, Hufford prepared a document titled "Evidential Investigation of incidents that Lead (sic) to a 9/24/15 Letter of Direction by Mrs. Jessica Irving and Reports that the Directives Issued have not been Followed" [hereafter, the "Hufford report"];

44. The document was filled with unsupported accusations, allegations and incomplete information. Hufford purportedly determined that Plaintiff had engaged in "fraudulent reporting." Although Hufford obtained information from a number of administrators, teachers and intervention staff, Hufford did not give Plaintiff notice of the

investigation, nor the opportunity to respond and explain or controvert the information Hufford identified in the report;

45. On January 27, 2016, Defendants, through Metzger, made a report to the ODE asserting that Plaintiff had resigned because of the District's investigation of Plaintiff's alleged conduct unbecoming the profession, including falsification of records;

46. The accusations against her were exaggerated and falsified, and Defendants knew that no report was warranted;

## III. FIRST CLAIM: CLAIM AGAINST INDIVIDUAL DEFENDANTS: FIRST AMENDMENT RETALIATION

47. Plaintiff realleges Paragraphs 1 through 46 as if fully set forth herein;

48. This claim is brought to vindicate rights guaranteed Plaintiff under the First and Fourteenth Amendments to the Constitution of the United States;

49. Plaintiff engaged in protected activity under the First Amendment when she (1) expressed concerns regarding the overqualification of students by Darby Woods IEP team; (2) expressed concern that her treatment was at least in part motivated because of her race; and (3), reported to Defendants that she had communicated with OBSLPA regarding District non-compliance with ODE regulations. Her expression was on matters of public concern;

50. The individual Defendants retaliated against Plaintiff because of her protected expression, as set forth above. Such retaliation included, but is not limited to, the actions identified in Paragraph 30;

51. Defendant Wise authorized and acquiesced in the unlawful retaliation;

52. The actions were taken with reckless disregard of the federally-protected rights of the Plaintiff;

53. As a direct and proximate result, Plaintiff has suffered loss of income, medical expense, humiliation, loss of reputation and self-esteem, and loss of earning capacity. Plaintiff has incurred legal expense. Plaintiff will suffer continuing injuries and losses in the future;

## IV. SECOND CLAIM: CLAIM AGAINST INDIVIDUAL DEFENDANTS: SECTION 1981 THROUGH SECTION 1983 AND EQUAL PROTECTION VIOLATIONS

54. Plaintiff realleges Paragraphs 1 through 53 as if fully set forth herein;

55. This claim is brought pursuant to the First, Fifth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. §1981 through 42 U.S.C. §1983;

56. Defendants discriminated against Plaintiff on the basis of her race, as set forth above;

57. Defendants retaliated against Plaintiff, because of her expression of discrimination based on race, as set forth above;

58. Defendants' actions were taken in reckless disregard of her federally protected rights;

59. As a direct and proximate result, Plaintiff has suffered loss of income, medical expense, humiliation, loss of reputation and self-esteem, and loss of earning capacity. Plaintiff has incurred legal expense. Plaintiff will suffer continuing injuries and losses in the future;

## V. THIRD CLAIM: CLAIM AGAINST INDIVIDUAL DEFENDANTS: POST-TERMINATION FIRST AMENDMENT RETALIATION

60. Plaintiff realleges Paragraphs 1 through 59 as if fully set forth herein;

61. Defendants retaliated against Plaintiff, in violation of her First Amendment protected expression, in filing the accusations against Plaintiff with the Ohio Department of Education;

62. Defendant Wise authorized and acquiesced in the unlawful retaliation;

63. The actions were taken with reckless disregard of the federally-protected rights of the Plaintiff;

64. As a direct and proximate result, Plaintiff has suffered loss of income, medical expense, humiliation, loss of reputation and self-esteem, and loss of earning capacity. Plaintiff has incurred legal expense. Plaintiff will suffer continuing injuries and losses in the future;

## VI. FOURTH CLAIM: CLAIM AGAINST THE BOARD: RACE DISCRIMINATION

65. Plaintiff realleges Paragraphs 1 through 64 as if fully set forth herein;

66. This claim is brought pursuant to 42 U.S.C. §1981;

67. Defendant discriminated against Plaintiff during her employment by creating a hostile work environment and taking the actions against her set forth above, all of which culminated in Plaintiff's constructive discharge;

68. As a direct and proximate result, Plaintiff has suffered loss of income, medical expense, humiliation, loss of reputation and self-esteem, and loss of earning

capacity. Plaintiff has incurred legal expense. Plaintiff will suffer continuing injuries and losses in the future;

## VII. FIFTH CLAIM: CLAIM AGAINST THE BOARD: RETALIATION

69. Plaintiff realleges Paragraphs 1 through 68 as if fully set forth herein;

70. This claim is brought pursuant to 42 U.S.C. §1981;

71. Defendant retaliated against Plaintiff for her protected expression during her employment by creating a hostile work environment and taking the actions against her set forth above, all of which culminated in Plaintiff's constructive discharge;

72. As a direct and proximate result, Plaintiff has suffered loss of income, medical expense, humiliation, loss of reputation and self-esteem, and loss of earning capacity. Plaintiff has incurred legal expense. Plaintiff will suffer continuing injuries and losses in the future;

## VIII. SIXTH CLAIM: CLAIM AGAINST THE BOARD: POST-TERMINATION RETALIATION

73. Plaintiff realleges Paragraphs 1 through 72 as if fully set forth herein;

74. This claim is brought pursuant to 42 U.S.C. §1981;

75. Defendant retaliated against Plaintiff for her protected expression during her employment by falsely reporting accusations against her to the Ohio Department of Education;

76. As a direct and proximate result, Plaintiff has suffered loss of income, medical expense, humiliation, loss of reputation and self-esteem, and loss of earning

capacity. Plaintiff has incurred legal expense. Plaintiff will suffer continuing injuries and losses in the future;

WHEREFORE, Plaintiff demands judgment of Defendants, jointly and severally, as follows:

1. Awards of loss of income, impairment of earning capacity and compensatory damages in such amounts as the jury deems just;

2. Awards of punitive damages in such amounts as the jury deems just;

3. Special damages, for a total demand of five million dollars ($5,000,000.00);

4. An award of attorneys' fees, interest and costs pursuant to 42 U.S.C. §1988;

5. Such other equitable relief as the Court deems just.

                                          Respectfully submitted,

                                          <u>/s/ Michael Garth Moore</u>
Michael Garth Moore (0025047)
341 South High Street Suite 201
Columbus    43215
Telephone 888-318-0075
mike@mgmoorelaw.com

Trial Counsel for Plaintiff